'JYoit, justice
— I concur in the opinion which has been delivered by my brother Gantt in this case, for the following reasons. The affidavit which the plaintiff is required to make at the time of filing his declaration, is not the foundation of his action. It is only intended for the benefit and security of the defendant. lie may renounce it, therefore, if he pleases, and '■did so by pleading to the action.
I do not think that the blank endorsement, operated as an actual transfer of the bond; but it gave an authority to the holder, to fill it up as ah assignment to whomsoever he pleased. The assignment to Stoney, therefore, was well enough, and although there may have been other persons interested in it, it did mot lie in the mouth of the defendant to take advantage of it. Every holder, while it remained blank, was prima facie the owner, and had had a right to receive the money arid give a discharge. The defendant, therefore, had a right to consider Brown the owner, as long as lie had the possession of the bond with a blank endorsement upon it. Whether it became a deed or not upon being filled up, is not at all material. It certainly was not before, and in any view the effect would be precisely the same, as long as it remained blank; and parol evidence might- be-offered to show when the assignment was filled- up, in the same manner as it may be received, to shew when a deed was delivered, contrary to the face of the instrment itself.
Evidence to rebut the ownership arising from the possession of the bond, might be, and actually was receivéd- in-this case; but evidence in reply ought also to have been admitted,to show that Brown had an interest in it and how that interest arose; ánd that evidence, therefore, was improperly -rejected. For, although a bond is not a- negotiable paper,’ yet an assignment transfers an equitable interest, and the interest of 'the--as-signee will be respected in a court of law. I am, therefore; of opinion, that a new trial ought to be grafted on that -ground,
*176 I am also of opinion, that Brown was improperly admitted as a witness. He had a direct and manifest interest in the 'event of the cause. He had guarantied the payment of die bond: He was, therefore, ultimately responsible, in case the plaintiff should fail to recover it of M‘Neill; and establishing M'NelFs liability, had a direct tendency to exonerate himself. A judgment in favor of BP Neill would have been conclusive evidence against him, and a judgment against M‘Ncill, with a satisfaction upon it, would be equally conclusive in his favor. I think, therefore that he was an incompetent witness, and that a new trial ought to be granted.
Huger, Justice concurred.
Bay, Justice
— In this case, I differ in opinion from the one just delivered, as I am strongly impressed with the idea, that substantia] justice has been done by the jury, in the verdict they have, found. This was an action by an assignee of a bond against one of the co-obligors, and the jury have-found for the plaintiff on the assignment, and the question now is, shall this verdict he set aside, and a new trial granted or not? And in my opinion there are nq legal grounds to support this motion, and all the confesion-und lengthy arguments whiefe have taken place on the occasion, have been owing to an attempt on the part of the defendant to introduce extraneous matter into this transaction, which has nothing to do with it, and to suppress testimony which was clearly admissible by the rules of evidence; as I trust will clearly appear by a brief examination of the case.
The bond in question, was given to Alexander Henry, by :the defendant and William and John Walton, for $25,000, oh; which.there is a regular assignment in the following words. “I. assign over the within bond and all my right and interest therein to John Stoney his executors and administrators, for value received.”
(Signed) A. Henry.
From this it is unquestionably evident, there was a regular transfer of this obligation and the money mentioned in the corn-dition of it, to Mr. Stoney, the assignee, which to all appearance is as fair and as simple a transaction as well could come before a court of Justice.
*177 But it was said at the trial, that this was a partnership business, and that the bond was given on the account of a form*' er copartnership which had subsisted between Alexander Henry* and Joshua Brown, and testimony was offered to be given, to Shew that it was given on this former copartnership account, and consequently that Joshua Brown had a power over it and' was authorized to receive the amount, so as to defeat Mr. Stoney of his plain and obvious right of recovery under and by virtue of the assignment. Here then was a manifest attempt to alter and vary this bond, a specialty under seal given to Alexander Henry in his own private right, by shewing that it was given for a copartnership concern for the use of Brown and Henry. This was surely an attempt to alter and change thé nature of a deed' in a most material part of it, for it went to take away a plain and obvious right from the obligee of the bond and his assignee, and give it to another who was a stranger to the transaction, contrary to one of the plainest and best established rules of evi- ■ deuce in our whole legal system; viz: that parol testimony ought • never to be admitted, to alter or vary or to contradict-the face of a deed or other instrument under seal. Lord Mansfield has laid it down in the broadest and most unqualified terms, that there never was heard a case in which parol testimony or evidence was admitted to annul or vary substantially a specialty, Loft-459. This doctrine is not only laid down by Lord Mansfield and the whole court in Loft, but the same principles are held by all the elementary writers on the law of evidence upon the subject, and this is the best answer I can give to all the cases quoted and relied upon by the counsel, on this part of the case; and particularly by one of the gentlemen, who conceded that one could not plead that a bond was given to a copartnership when it does not appear upon the face of it to have been given for that purpose, but there was nothing to prevent evidence being given of it. I am, therefore, of opinion, that this doctrine of offering parol testimony to do away the force and efficacy of a ' specialty or deed under seal, executed and made under the usual solemnities, is utterly inconsistent with all the rules of evidence with respect to specialties, and that the judge of the circuit . 'Court acted correctly and legally in rejecting it and all thg. *178 collateral consequences which went to impugn the face of the bond itself., ,
2d. The next important inquiry in the case, is, whether-1 -this, assignment.on the back of this bond to Stoney, was good and valid or,not;,and against its validity it was said, that it was originally a blank endorsement and transferred no right, or if it* did, that the right was assigned to John Stoney and three others, and.not to John Stoney alone; consequently that he could sup* port no action upon the assignment under the late act of assembly. Upon this point, all the old and antiquated authorities of' the common law, have been quoted, without any reference to thé situation and convenience of this country, and they have been arrayed against the beneficial usages of S. Carolina, for nearly, half a century past, to facilitate the interchanges of choses in action, among the citizens of this country, in their various transactions. with- each other. In the case of Parker and Kennedy, SO'long; ago, as the year 1794, it was stated and admitted that bonds, to the amount of several hundreds or thousands of pounds sterling, had passed away from man to man in the various transactions with each other since the revolution by blank endorsements on the back of them. That in sales and purchases, they had served the^ uses of the country as a kind of circulating medium, which relieved the distresses of the citizens exceedingly * at a period when the cash had been drained out of the state or ' exported to foreign countries, and that in these transfers the usual and common method of passing them was by a blank endorse- - ment on the back of the bond; 1 Bay, 399; and chief justice-Rutledge, in his opinion, delivered on that occasion, observed, that the intent and design of such blank endorsement was to enable the holder to fill np the assignment and to Sue for and recover Jhe money .to his own use; and of the same opinion were the whole court; although two of the judges went further, and considered this blank assignment like an endorsement on a bill of exchange,, and made.thc endorser .liable upon the failure-of the-obligor; but-in the authority .of the holder to fill up this blank endorse-ment in his own name, and to sue and recover the money to his own use, the judges all agreed. In all' these cases, however, as bonds were not payable to order, the holder was obliged to sue. ip the name of the obligee, which-was often attended with serious' *179 inconveniences. To- remedy all which inconveniences, the act of 1798, was passed four years afterwards, authorizing'assignees of bonds to sue and recover in their own names; ánd the preamble of this act recites, “that whereas many inconveniences have been experienced from assignees of bonds, notes or bills, • not payable to order, or not negotiable, being compelled to bring suits for the recovery of monies due thereon in the names of the obligees of said bonds, or payees of said notes Or bills.’* For remedy, it is declared that the assignees of bonds and notes, may bring suit in their own names Sic. Sic. ' The, decision of the above case, and the opinion of the judges upon this point in 1794, and the recognition of the same principles in the preamble of the act of 1798, added to the universal custom in South Carolina, and the general convenience of the inhabitants thereof, are sufficient in my mind to form a part of the common law of South Carolina, upon the subject at -this day, and to render obsolete and inapplicable, all the old doctrine of the English law to the contrary notwithstanding. Highly as J value the old common law, and have always estimated it, I am not such a slave to its principles as to consider it like the laws of the Modes and Persians, unalterable. Times and circumstances alter the situation of the world, and the condition and conveniences of mankind render alterations necessary, and accordingly improvements have been made in the common law in England, from the time of Lord Coke, down to the present day; and surely the independent states of this union, have as good a right to amend and improve their common law systems as the people of England have. To conclude upon this assignment or endorsement, as presented to the-court, after it was filled up, there was no averring to the contrary; the court was bound by it and could not travel out of it, and it would have beén exceedingly improper to have suffered any parol testimony to have contradicted the assignment, as already mentioned ip regard to the face of the bond. But admitting for argument sake, that it was intended for the joint benefit of John Stoney, Williamson, Cohen and Fitzsimons, was-there any thing improper or illegal in the consent of the threeTatter, that the bond should, in order to simplify the transaction, be assigned to Jtsliii Stoney,.- for their joint benefit? Surely1 itot; That, howeVeri *180 Was a matter for their consideration, not for the court, whcii the blank was filled up in his name. The court could not go into ihc investigation of that matter, in a trial at law, between the assignee and a co-obligor of the bond.
3d. The guarantee of Brown upon the bond. By what •authority Joshua Brown made this guarantee, or under what obligation he was to make it, I am at a loss at'this moment to conjecture, after all that has been said about it.- He was certainly no party in the transaction here, between the co-obligors and Alexander. Henry; he was, from aught that appears upon the face of the bond, an utter stranger to it; 1 am, therefore, constrained to consider it as a voluntary and unnecessary undertaking on his part.
Then as to the receipt on the back of this bond, by Brown to M'Neill for the $8514, the one-third of the principal of the bond, and the release to M£Neill from his responsibility: By what authority, I would ask, did Brown receive this money -and give this discharge; which, if lawful, was a release in law to the whole of the co-obligors? The authority did not come from Alexander. Henry, the obligee of the bond; for he has transferred to Stoney, and it was not pretended that John Stoney ever gave him any such authority to receive a cent of it-If then he was neither authorised by Henry, the obligee, nor by Stoney, the assignee, it was an unauthorised transaction between. Brown andM-Neill, a- collusion between them to deprive the plaintiff, Stoney, from his recovery, or to throw funds unwarrantably into the hands of Brown, at the expense of Stoney; and what proves this collusion to my mind, is, in the first place, the. evidence of General Geddes, ■ who swore that when he delivered this bond to Brown, as the agent of Mr. Henry, it was delivered in trust, and for the purpose of carrying to Mr. Stoney; and the receipt given by Brown, for it is to that effect; which give him no power over the bond, further than to carry and deliver it up to Stoney, and with respect tp M'Neill, Brown proved, after he was sworn, that when M‘Neill paid the money to him, he at first objected, as having no right to receiye. it or power over the bond, and that he, M‘Neill, replied that he did not cure a damn about it whether he had pow-<?r or not, all he wanted was for Brown to sign the receipt on *181 the bond. From this plain, simple state of facts, it appears to me that the jury acted judiciously in disregarding the receipt of Brown on the back of the bond, and in considering it as a fraud on the assignee. As to the circumstance of Brown’s keeping the bond in his hands for two years, that did not alter the original trust when the bond was delivered to him, an iota.. It gave him no authority to receive the monCj and discharge the defendant; and if he had kept the bond in his possession to the present day, he would still have remained a trustee for Mr. Stoney.
5th. Brown’s testimony. As to the admission of Brown as a witness. It appears to me that he was not called to defeat his own guarantee. (If it was legally entered into.) He admitted it; and, therefore, was called upon to swear against his own interest, and, in this respect, against himself; and it is a rule of law; fha a witness is not good for himself, but is the best evidence against himself; 1 Esp. Rep. 21. But the great object oF Brown’s testimony was to shew a knowledge of the transaction between himself and M!Neill, and that the latter knew that the bond had been transferred to Stoney, at the time he persuaded Brown to receive the money and give him a discharge, and that he, the defendant, was a particeps criminis. On the other hand, it was contended that Brown had such an interest in this case as disqualified him from being a witness, and therefore, that the court erred in permitting him to be sworn on the trial. On the question of Brown’s interest, it is necessary to take a short view of the relative situation of both parties. M'Neill was one of the obligors of the bond, and Brown the voluntary guaranty of the payment, in case of the insolvency of the obligors. M'Neill says, the bond is paid, legally paid' to Brown; according ta. this, .Brown is discharged from his guarantee. Yet, when Brown is called upon as a witness to prove this payment, he is an interested witness Upon this guarantee, and because he is about to swear that the bond has not been paid off, whereby he will revive his ovm responsibility as a guarantee, (thereby fixing the debt upon himself,) he ought to be excluded. The fallacy of the argument is so apparent, that it is only necessary tp state it, to shew its inconsistency. It creates and destroys, mio flatu. But is said, it is foing the debt upon M‘Neill, this. *182 however, does not fix the debt upon one more than the other, and he is still swearing against his own interest, for M‘Neill may • not pay the debt after Brown proves it to be due, and then he must be responsible. And this brings me 6thly, to consider what kind of interest will exclude a witness from giving testimony.
It cannot be necessary at this time, to turn to many au* .thorities to prove that contingent and remote interests will not exclude a man from being a witness. Courts of Justice at this day incline to admit witnesses, seeing it is better to leave them testimony to a jury than to exclude, where their, interest is not immediate and direct. In, Brent and Baker, 3rd Term Rep. 32, Lord Kenyon quotes Lord Mansfield, as having laid it down, that the old cases on the competency of witnesses have gone on very subtile grounds: But of late years, the courts have endeavored as far as possible, to let the objection go to the credibility rather than to the competency of a witness. Lord Hardwick, in the case of King, vs. Bray, says, that whenever a question of this sort is raised, he was always inclined to restrain it to the credit rather than the competency of the witnesses; and Lord Kenyon himself says, he concurred ijx the above rules, and added that It was better to receive the evidence of the witness and submit it to a juiy, rather than to reject upon the ground of incompetency; and Judge Buller iu page 36, approved of what was said by Lord Harwicke, that it Was better to lean against the objections to the competency of a witness and let them g'O to the credit of the witness; for says he, the true line is this, will the witness gain or lose by. the event of the cause? and if the verdict could nofbe given againsthim in any other case, he ought to be admitted. mGrose, J, said the question was whether the witness was or was not interested in the cause; and if he is not, then he ought to be admitted. Then again, as to a remote or contingent interest. In Term Rep. 164, the court said, that the bare possibility of an action being brought against a witness, is no objection to his competency, ]n that case, a security to .an administration bond, was admitted qs a witness for the administratrix; a case as strong, if not stronger than a guarantee, being a witness in a case of his colt lateral, undertaking.. Now it: appears to. me that . Brown wae *183 only to be liable on his guarantee, in default of M‘Ncill’s solvency. It was, therefore, that kind of remote interest which did not exclude him from being a competent witness,’ and the judge below could not legally exclude him, but on the contrary, very properly permitted him to he sworn as a witness. The last objection I shall observe upon, is, the objection to the want' of an affidavit of a subsisting debt, filed with the declaration. If this objection was a solid and available one, the defendantought to have demurred for want of it, which would have struck at the cause of action, but as he did not do so, and pleaded is-suably to the declaration, no less than four separate pleas, and concluded to the country in them all, I am of opinion, it is too late to take advantage of it after verdict. Upon the whole, a£- • ter considering all the grounds, I am of opinion that there are no legal reasons for a new trial and that the rule ought to be discharged.
Grimke, Petigru and Harper, for motion.
Hunt and Prioleau, contra.
ColoocJc, J, concurred in the foregoing opinion of Justiep Bay,